SILLIMAN v. SAMPSON.

(Supreme Court, Appellate Division, Fourth Department. June 16, 1899.)

1. ASSAULT AND BATTERY—ACTION FOR DAMAGES—EVIDENCE.
   In an action for assault and battery, where the defense is that plaintiff used threatening language towards defendant, and had a knife in his hand, and that defendant struck him in the belief that he was about to attack defendant, evidence that plaintiff was a fighting, quarrelsome man, and had that reputation, is admissible.

2. SAME.
   In an action for assault and battery in which plaintiff was a witness, evidence that he had many years before confessed to having committed a larceny, having no connection with the assault, was incompetent.

3. APPEAL—REVIEW—HARMLESS ERROR.
   The admission of incompetent evidence which has a tendency to prejudice a party in the minds of the jury cannot be disregarded as harmless error.

Appeal from Wayne county court.

Action by Robert Silliman against Stanley Sampson. Judgment for defendant, and plaintiff appeals. Reversed.

Plaintiff, in his complaint, alleged that the defendant "assaulted and beat the plaintiff, knocked him down with his fist, and struck him many violent blows after he was down, in anger and malice, whereby the plaintiff was greatly injured, both in body and mind, to his damage of five hundred dollars." The answer of the defendant contains a denial of most of the allegations of the complaint, and alleges "that on the 1st day of March, 1898, in the village of Wolcott, Wayne county, N. Y., while defendant was talking with plaintiff on the streets, the plaintiff became angry, and assaulted the defendant, and used vicious and threatening language towards defendant; that plaintiff at the time had an open knife in his hand, and that defendant, in fear of injury to himself, and in self-defense, repelled the assault by striking the plaintiff away from him with his fist; that this act is the assault complained of in the said complaint; that the plaintiff has at various times to this defendant, and in the hearing of others, used violent and abusive and threatening language towards the defendant, and that the defendant, by reason thereof, had become apprehensive of a personal assault on himself by plaintiff."

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

William Roe, for appellant.
Wood & Horton, for respondent.

HARDIN, P. J. Plaintiff was a witness in his own behalf, and gave evidence tending to support the allegations of the complaint. He stated that he was about 50 years old, and that he had been engaged in business with the defendant prior to the assault. Plaintiff called several witnesses, who gave evidence tending to support his view of the transaction which was involved in the issue between the parties. When the plaintiff rested, no motion was made for a nonsuit. The defendant was called as a witness in his own behalf, and he stated that he and the plaintiff had theretofore been engaged in the business of operating a threshing machine, and that while he was so engaged he had trouble with the plaintiff on several occasions. The court ruled that the defendant might give evidence that there was bad feeling between the parties, and that it "had continued from time to time, as bearing upon the right that this defendant had to think he was assaulted, or likely to be assaulted, at the time of the altercation, but is incompetent for any other purpose." After that ruling was made, the defendant was permitted to state, viz.: "He [plaintiff] stated that if anything had happened to me that night he would have owned the whole thing damn quick." The defendant was then permitted to state that the parties had had trouble in Johnn's shop in the fall preceding the transaction complained of, and to some extent he described the altercation then had. On the defendant's redirect examination he was asked as follows: "Q. When you struck him that first blow, you acted, did you not, under an honest belief that you were doing what you had a right to do, and were justified in doing it?" The witness answered: "Yes, sir; I struck him because I thought my life was in danger." The defendant thereupon called as a witness one Quereau, who narrated his observations of the encounter which is the subject of this action, and then gave evidence that the reputation of the plaintiff was bad from the speech of people, and he was then asked, viz.: "Q. What is his reputation in regard

to his being a fighting, quarrelsome man?" This was objected to as immaterial and incompetent, and overruled, and an exception taken. The answer given was as follows: "I have heard that he quarrels and scraps with different people." The witness added that the plaintiff appeared very angry and excited at the time of the encounter with the defendant. A witness by the name of Isham was called by the defendant, and stated that the plaintiff's general reputation was bad, judging from the speech of people, and added that he would not believe him under oath. Thereupon the witness was asked this question: "Q. Do you know anything about his being a fighting, quarrelsome man?" The question was answered after an exception taken to the ruling admitting it. The answer was as follows: "Yes, sir; he is that kind of a man. He has had that reputation for eight or ten years." Under the issue that was being considered, we think the evidence was allowable. A witness by the name of Field was called, who testified that he had known the plaintiff since 1862, and that he knew his general reputation, and that it was bad, and that he would not believe him under oath. Thereupon this question was propounded to him: "Q. Do you know his reputation for being a fighting, quarrelsome, fighting man?" An objection and exception were taken to the question, and the witness was allowed to answer, and his answer was, "Yes; he is quarrelsome, and has a fighting disposition." We think that evidence was properly received under the issue that was being tried. We think it was proper to allow the witness Decker to state whether the plaintiff tried to get him to swear falsely in reference to this matter, and to detail the efforts made in that regard by the plaintiff. When the witness Cooper was upon the stand, called by the defendant, he stated that he had lived in the town some 60 years. Thereupon the following question was propounded to him: "Q. State whether or not, in the year 1862, the plaintiff, Silliman, admitted to you that he stole your harness, and brought it back to you." This was objected to as immaterial and incompetent, and as collateral matter. The objections were overruled, and an exception taken. The answer given by the witness was as follows: · "I accused him of it, and he finally owned up that he took it, and he fetched it back to me." We think this evidence was improperly received, and the court committed an error in the ruling already stated. We think, in this case, we ought not to disregard the evidence that was improperly received.

"An error in receiving incompetent evidence, if properly excepted to, can only be disregarded when it can be plainly seen that it did no harm." Foote v. Beecher, 78 N. Y. 155.

In the course of the opinion delivered in People v. Corey, 148 N. Y. 489, 42 N. E. 1071, Judge Martin said:

"It is a well-established principle that illegal evidence which has a tendency to excite the passions, arouse the prejudices, awaken the sympathies, or warp or influence the judgment of jurors in any degree cannot be considered as harmless."

We think the evidence that the plaintiff in 1862 admitted to the witness Cooper that he had stolen a harness, and that he brought it

back to Cooper, was improperly received. In Stokes v. People, 53 N. Y. 165, it was said:

"The rule that an error committed upon a trial may be overlooked when the party complaining was not prejudiced thereby is only applicable in cases where the error could by no possibility have produced injury."

We think a new trial should be ordered.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.